IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED
JUL 17 2025
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ NOT
DEPUTY CLERK

| | |
|---|---|
| MARK ANTHONY ORTEGA<br>Plaintiff,<br><br>v.<br><br>SILVERSHARK, INC. D/B/A/ FUNDORA FUNDING, and ELI M. SILVERSTEIN<br>Defendants. | Case No. SA25CA0850FB<br><br>PLAINTIFF'S ORIGINAL COMPLAINT<br><br>DEMAND FOR JURY TRIAL |

## NATURE OF THE CASE

1. This This action seeks statutory damages and injunctive relief to stop Defendants Silvershark Inc., doing business as Fundora Funding ("Fundora"), and its owner, Eli M. Silverstein, from orchestrating and conducting a persistent and unlawful telemarketing campaign that bombards Plaintiff Mark Anthony Ortega ("Plaintiff") with unsolicited, harassing telemarketing calls to market business financing products. The calls violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA"), and the Texas Business and Commerce Code, Chapters 302 and 305.

2. Defendants' unlawful conduct is particularly egregious, as it includes operating without a required state license, as evidenced by a Cease and Desist Order issued by the State of California, and continuing to call Plaintiff despite his repeated requests to be placed on their do-not-call list. See Exhibit A. This history establishes Defendants' willful and knowing disregard for Plaintiff's privacy rights and for state and federal law. The telemarketing campaign employs a calculated scheme designed to conceal the true identity of the legal entity responsible for the calls and deceptively market financing products, causing Plaintiff substantial harm in the form of invasion of privacy, frustration, anxiety, wasted time, and interference with his daily life.

1

## BACKGROUND ON THE TCPA

3. Enacted in 1991 with bipartisan support, the TCPA aims to protect consumers from the nuisance and invasion of privacy caused by unsolicited telemarketing calls, reflecting Congress's recognition of such calls as a "scourge of modern civilization." See 137 Cong. Rec. 30821 (1991).

4. Decades later, the TCPA remains a crucial safeguard against the ever-increasing volume of unwanted calls, which consistently rank among the top consumer complaints. *See Omnibus TCPA Order,* 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015*).* The TCPA remains a vital tool for combating these abuses, and its private right of action is essential to empower individuals to hold violators accountable.

5. The TCPA specifically prohibits the use of automated telephone dialing systems or pre-recorded voice messages to make telemarketing calls to cellular telephones without the prior express consent of the called party. Additionally, the TCPA strictly forbids telemarketing calls to numbers listed on the National Do Not Call Registry. These provisions are designed to protect consumers from the unique harms associated with these types of intrusive calls, including wasted time, invasion of privacy, and the potential for economic loss.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. *See Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368 (2012)* (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA). As this action involves alleged violations of the TCPA, a federal question is presented, thus conferring jurisdiction upon this Court.

7. Additionally, this Court has supplemental jurisdiction over the claims arising under Tex. Bus. & Com. Code § 302 and § 305. While the Texas Business and Commerce Code, Chapter 302 and 305, is a state law, it complements and supplements the federal TCPA by providing additional protections to Texas residents against unwanted telemarketing calls. Under 28 U.S.C. § 1367, federal courts may exercise supplemental jurisdiction over state law claims that are so related to claims within the court's original jurisdiction that they form part of the same case or controversy.

8. In this instance, the claims under the Tex. Bus. & Com. Code § 302 and § 305, are intertwined with the TCPA claims, as they both arise from the same set of facts involving the Defendants' telemarketing calls to Plaintiff. The legal issues and factual questions involved in both sets of claims are closely related, and it would be efficient and convenient for the Court to address them together in a single proceeding. Therefore, the Court's supplemental jurisdiction is appropriate to encompass the claims arising under Tex. Bus. & Com. Code § 302 and § 305.

9. This Court has personal jurisdiction over Defendants as they purposefully directed their unlawful telemarketing activities at Texas and specifically at Plaintiff, who resides in this district. By soliciting business from Texas residents, Defendants purposefully availed themselves of the privilege of conducting activities within the State of Texas.

10. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to this action occurred within this district.

## PARTIES

11. Plaintiff Mark Anthony Ortega is a natural person who resided in San Antonio, Bexar County, Texas at all times relevant hereto.

12. Defendant Silvershark Inc. is a California corporation with its principal place of business in Studio City, California. On information and belief, Silvershark Inc. conducted the business activities described herein under the unregistered fictitious name "Fundora Funding.".

13. Defendant Eli M. Silverstein is a natural person and a resident of the State of California. On information and belief, Silverstein is the founder, chief executive officer, director, and controlling agent of Defendant Silvershark Inc., and personally directed and participated in the unlawful conduct described herein.

14. Defendants are both classified as a "person" as that term is defined by 47 U.S.C. § 153(39).

## FACTUAL BACKGROUND

15. On or about January 23, 2012, seeking to prevent unwanted telemarketing calls, Plaintiff registered his cellular telephone number, 210-744-9663 ("Plaintiff's Number"), with the National Do Not Call Registry. Plaintiff has never de-listed this number.

16. Plaintiff is, and has been at all times relevant to this action, the regular and sole user of Plaintiff's Number.

17. Plaintiff uses his cellular phone primarily for personal, residential, and household purposes.

18. Plaintiff's Number is designated for residential use, as it is assigned to a consumer telephone exchange service and is not assigned to a telephone exchange service designated for business use.

19. Plaintiff has never had any prior business relationship with Defendants, has never been a customer, and has never granted express written consent to Defendants or any entity acting on their behalf to receive telemarketing calls.

20. At all relevant times, Defendant Silvershark Inc. is a California corporation in good standing, with Defendant Eli M. Silverstein listed as its Founder, Chief Executive Officer, Director, and Agent for Service of Process.

21. Upon information and belief, Defendant Silvershark Inc. operates its business under the fictitious business name or d/b/a "Fundora Funding."

22. Upon information and belief Fundora Funding is a small, closely-held family business controlled by Defendant Eli M. Silverstein and his brother, Cobi M. Silverstein.

23. As the CEO and a principal owner of this small family enterprise, Defendant Eli M. Silverstein had direct, personal control and authority over the business practices, policies, and personnel of Fundora Funding, including its marketing, sales, and loan origination activities.

24. Beginning on or around September 24, 2024, Plaintiff has been the target of an extensive and aggressive telemarketing campaign, receiving at least twelve (12) unsolicited telephone calls to his cellular telephone number from agents of the Defendants.

25. On or around February 5, 2025, Plaintiff received a telemarketing call from a representative of Fundora Funding who identified himself as "Kenny." During this call, Plaintiff unequivocally stated that he was not interested and explicitly requested to be added to Defendants' internal do-not-call list.

26. In response to Plaintiff's request, "Kenny" disputed the applicability of federal do-not-call laws, stating, "it is a business line and I am free to call a business line at any point... as a business, that doesn't necessarily apply." This statement reflects a corporate policy, directed and sanctioned by Defendant Eli M. Silverstein, of willfully ignoring TCPA regulations.

27. Despite Plaintiff's clear and unambiguous do-not-call request on February 5, 2025, Defendants continued to harass Plaintiff, additional calls to his cellular telephone number.

28. A non-exhaustive list of the unlawful calls placed by Defendants to Plaintiff's cellular number, (210) 744-9663, after Plaintiff's do-not-call demand on February 5, 2025, includes the following:

    a. March 3, 2025, at 6:55 PM from (818) 351-0199

5

b. March 4, 2025, at 6:27 PM from (818) 351-0199

c. March 11, 2025, at 11:06 AM from (818) 351-0198

e. March 21, 2025, at 1:45 PM from (818) 351-0225

f. April 4, 2025, at 1:04 PM from (818) 351-0198

g. April 22, 2025, at 3:57 PM from (818) 350-7014

h. May 9, 2025, at 4:50 PM from (818) 350-4951

i. May 12, 2025, at 2:27 PM from (818) 351-0198

j. May 27, 2025, at 1:10 PM from (818) 350-5464

29. On April 4, 2025, Plaintiff received another such call from an individual identifying himself as "Xavier." When Plaintiff again requested to be placed on the do-not-call list, Xavier's manager, who identified himself as "James," took over the call.

30. When Plaintiff reiterated his do-not-call request and stated his intent to file a lawsuit for the repeated violations of the TCPA, "James" became hostile and verbally abusive. James mockingly stated, "I wish you the best with all the calls, okay? All the calls in the world. We have so much fun. I hope you end up on more lists." "James" concluded the call by stating, "You enjoy your weekend you grumpy f---."

31. This abusive conduct, including the threat to place Plaintiff on more calling lists, demonstrates that Defendants' violations of the TCPA were not merely negligent, but were willful, malicious, and executed in conscious disregard for the law and Plaintiff's right to privacy.

32. The actions and policies of employees like "Kenny" and "James" were a direct result of the corporate culture and business strategy implemented and overseen by Defendant Eli M. Silverstein, who as CEO, is ultimately responsible for the actions of his employees and the unlawful practices of his company.

33. Furthermore, Defendants' pattern of unlawful conduct is corroborated by a Desist and Refrain Order issued by the California Department of Financial Protection and Innovation (DFPI) against Fundora Funding on May 19, 2025. (See Exhibit A).

34. The DFPI Order found that Fundora Funding, under the control of its principals, engaged in the business of a broker and/or finance lender in California without the required license, in violation of California law. This official regulatory finding establishes a clear pattern and practice of Defendants intentionally operating their business outside the bounds of the law.

35. The combination of the TCPA violations, the verbally abusive threats, and the official regulatory action for unlicensed lending demonstrates a business model, conceived and directed by Defendant Eli M. Silverstein, that relies on illegal and harassing conduct to generate profit.

36. Plaintiff has suffered numerous harms as a result of Defendants' unlawful telemarketing campaign in the form of invasion of privacy, frustration and annoyance, wasted time, anxiety, and depletion of his cellular phone's battery life.

## COUNT I
### Violation of the Telephone Consumer Protection Act
### (47 U.S.C. § 227(c))

37. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 36.

38. The TCPA prohibits any person or entity of initiating any telephone solicitation to a residential telephone subscriber who has registered his telephone number on the National Do-Not-Call Registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. 47 U.S.C. § 227(c).

39. At all relevant times mentioned herein, Plaintiff's cellular telephone number, (210) 744-9663, was and remains registered on the National Do-Not-Call Registry. Plaintiff's number had been on the Registry for more than 31 days prior to Defendants' calls.

40. Defendants, in violation of 47 U.S.C. § 227(c), initiated, or caused to be initiated, multiple telephone solicitations to Plaintiff's registered telephone number for the purpose of encouraging the purchase of their loan products and services.

41. Defendants did not have Plaintiff's prior express written consent to place these telemarketing calls, nor did they have an established business relationship that would exempt them from the TCPA's prohibitions.

42. Defendants' acts as described above were done with malicious, intentional, and willful disregard for Plaintiff's rights under the law. Defendants' knowledge and willfulness are evidenced by their pattern of ignoring Plaintiff's direct and repeated requests to stop calling, and the hostile and obscene conduct of the Defendants' agents.

43. As a direct and proximate result of the above violations of the TCPA, Plaintiff has suffered the losses and damages as set forth above, entitling Plaintiff to an award of statutory, actual, and treble damages against all Defendants, jointly and severally.

### COUNT II
### Violation of the Telephone Consumer Protection Act
### Failure to Honor Do-Not-Call Request
### (47 C.F.R. § 64.1200(d))

44. Plaintiff realleges and incorporates by reference the allegations in Paragraphs 1 through 36.

45. The TCPA and its accompanying regulations impose an affirmative obligation upon entities engaged in telemarketing to honor consumer requests to cease such solicitations. *See* 47 C.F.R. § 64.1200(d)(6).

46. Specifically, 47 C.F.R. § 64.1200(d)(6) requires a "person or entity making calls for telemarketing purposes" to "maintain a record of a consumer's request not to receive further telemarketing calls" and honor said request "for 5 years from the time the request is made."

47. On or around February 5, 2025 and on numerous other occasions, Plaintiff expressly and unequivocally instructed Defendants to stop contacting him and place his number on their internal do-not-call list. Each of these verbal instructions constituted a legally effective do-not-call request pursuant to 47 C.F.R. § 64.1200(d).

48. As the entity engaged in telemarketing, Defendant Silvershark Inc. had a direct and non-delegable legal duty to record and honor Plaintiff's request. Defendant Silvershark Inc., acting through its agents and employees, completely failed in this duty by making at least nine (9) subsequent telemarketing calls to Plaintiff. This systematic failure demonstrates that Defendant Silvershark Inc. did not have a compliant written policy for maintaining a do-not-call list and failed to train its personnel on its use, in direct violation of federal law.

49. Defendant Eli M. Silverstein, as the Chief Executive Officer and controlling principal of this small, closely-held family business, is personally liable for these violations. Defendant Silverstein was personally responsible for establishing, implementing, and enforcing legally compliant telemarketing policies for Silvershark Inc. The systematic failure to honor Plaintiff's do-not-call request, coupled with the statements of his employees reflecting a disregard for the law, demonstrates that Defendant Silverstein either directly authorized this unlawful conduct or, at a minimum, intentionally failed to implement the policies and training required by 47 C.F.R. § 64.1200(d), thereby creating and sanctioning the illegal telemarketing practices of his company.

50. As direct and indisputable evidence of Defendants' failure, they initiated at least nine (9) subsequent telemarketing calls to Plaintiff's number after the first do-not-call request was made on or around February 5, 2025.

51. Defendants' violations were willful and knowing demonstrated by their agent "Kenny" explicitly dismissing the validity of Plaintiff's request, and their agent "James" later threatening to subject Plaintiff to even more calls while berating him with profanity.

52. As a result of Defendants' failure to implement, maintain, and honor an internal do-not-call list, and/or their intentional decision to disregard Plaintiff's requests, Plaintiff is entitled to statutory, actual, and treble damages against all Defendants, jointly and severally.

### COUNT III
### Violation of the Texas Business and Commerce Code
### (Tex. Bus. & Com. Code § 302.101)

53. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 36.

54. The actions of Defendants, as described herein, constitute "telephone solicitation" as defined under Tex. Bus. & Com. Code § 302.001(7), because they were unsolicited telephone calls to Plaintiff made for the purpose soliciting the sale of their financial products.

55. Tex. Bus. & Com. Code § 302.101 requires a person to register with the Texas Secretary of State before making telephone solicitations to a consumer in Texas.

56. A diligent search of the Texas Secretary of State's publicly available database confirms that at the time of the calls, neither Defendant Silvershark Inc., nor Eli M. Silverstein, nor the d/b/a Fundora Funding, held the required registration certificate to legally engage in telemarketing in the State of Texas. (https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp)

57. Defendant Silvershark Inc. is directly liable for these violations as it is the business entity that conducted, through its agents, an unregistered telemarketing campaign in Texas. It made

the decision to solicit Texas consumers and was therefore obligated to secure the necessary state registration, which it failed to do.

58. Defendant Eli M. Silverstein is personally liable for these violations. As the Chief Executive Officer and controlling principal of the enterprise, he personally directed, controlled, and authorized the company's telemarketing campaign to be aimed at consumers in Texas. Defendant Silverstein had a personal duty to ensure his company complied with the laws of the jurisdictions in which it operated. His failure to register Silvershark Inc. as a telemarketer in Texas before directing his employees to solicit Texas consumers was a personal directive, or at minimum a negligent omission of his duty, that caused the company to violate state law, for which he is individually responsible.

59. Defendants' failure to register before placing at least 12 telemarketing calls to Plaintiff constitutes multiple, separate violations of this chapter. Section 302.302(a) of the Texas Business & Commercial Code provides that a person who violates this chapter is subject to a civil penalty of no more than $5,000 for each violation.

60. Furthermore, § 302.302(d) provides that the party bringing the action is also entitled to recover all reasonable costs of prosecuting the action, including court costs, investigation costs, deposition expenses, witness fees, and attorney fees.

### COUNT IV
### Violation of the Texas Business and Commerce
### (Tex. Bus. & Com. Code § 305)

61. Plaintiff realleges and incorporates by reference the allegations in Paragraphs 1 through 36.

62. Texas Business and Commerce Code § 305.053(a) explicitly provides a civil cause of action to any person who receives a communication that violates the federal Telephone Consumer Protection Act, 47 U.S.C. § 227. As previously alleged, Plaintiff's telephone number

has been registered on the national "do-not-call" registry since 2012, and it is therefore included on the Texas no-call list protected by this statute.

63. As alleged in detail in Counts I and II, Defendants violated 47 U.S.C. § 227 by initiating multiple telephone solicitations to Plaintiff's telephone number, despite the number being registered on the National Do Not Call Registry and by failing to honor Plaintiff's direct do-not-call requests.

64. Because Defendants' conduct violated 47 U.S.C. § 227, Plaintiff is entitled to bring this separate cause of action for those same violations under Texas state law.

65. Pursuant to Tex. Bus. & Com. Code § 305.053(b), Plaintiff is entitled to recover the greater of his actual damages or $500 for each and every violation.

66. Furthermore, because Defendants' violations were committed knowingly or intentionally, as evidenced by their placing numerous calls after being told to stop and the malicious conduct of their agents, Plaintiff is entitled to an increased award of damages of up to $1,500 for each violation, as permitted by Tex. Bus. & Com. Code § 305.053(c).

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court grant the following relief against Defendants, jointly and severally:

A. For Defendants' violations of the TCPA, 47 U.S.C. § 227(c), award Plaintiff statutory damages of $500.00 for each violation, and find that Defendants' conduct was willful and knowing, thereby trebling the damages to $1,500.00 for each and every violation;

B. For Defendants' violations of the Texas Business & Commerce Code § 302.101, award Plaintiff statutory damages of up to $5,000.00 for each and every violation;

C. For Defendants' violations of the Texas Business & Commercial Code § 305, award Plaintiff statutory damages of $500.00 for each violation, and find that Defendants'

12

conduct was knowing or intentional, thereby increasing the damages to $1,500.00 for each and every violation;

D. Issue a permanent injunction prohibiting Defendants, their agents, and employees from placing any further telephone solicitations to Plaintiff in violation of the TCPA and the Texas Business and Commerce Code;

E. Award Plaintiff all reasonable attorneys' fees, witness fees, court costs, and other litigation expenses incurred by Plaintiff pursuant to Tex. Bus. & Com. Code § 302.302(d);

F. Award Plaintiff pre-judgment and post-judgment interest at the highest rates allowed by law; and

G. Grant any other and further relief, both at law and in equity, that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiff, Mark Anthony Ortega, demands a jury trial in this case.

Dated: July 5, 2025

Respectfully submitted,

Mark Anthony Ortega
Plaintiff, Pro Se
mortega@utexas.edu
PO Box 702099
San Antonio, TX 78270
210) 744-9663

# **Exhibit A**

STATE OF CALIFORNIA
BUSINESS, CONSUMER SERVICES AND HOUSING AGENCY
DEPARTMENT OF FINANCIAL PROTECTION AND INNOVATION

TO: Fundora Funding
Ryan Wilcox
www.fundorafunding.com
contact@fundorafunding.com
ryan@fundorafunding.com

**DESIST AND REFRAIN ORDER**

**(For violations of Financial Code sections 22100)**

The Commissioner of Financial Protection and Innovation (Commissioner) finds that:

1. The Commissioner is authorized to pursue administrative actions and remedies against persons who engage in violations of the California Financing Law (Financial Code § 22000, *et seq.*) (CFL).

2. At all relevant times, Fundora Funding has a website at www.fundorafunding and an email address at contact@fundorafunding.com (Email Address) and the following phone numbers: (818) 351-0199, (818) 350-4090, and (818) 914-1321. Although its website states that it is "incorporated in California," Fundora Funding does not appear to be registered with the California Secretary of State.

3. At all relevant times, Ryan Wilcox has held himself out to California consumers as a "Senior Account Manager" for Fundora Funding and uses the email address at: ryan@fundorafunding.com.

4. Beginning in at least 2025, Fundora Funding engaged in the business of a broker and/or finance lender in California by financing for commercial loans.

5. Fundora Funding operated the website at www.fundorafunding.com and the website referenced the email address contact@fundorafunding.com. On the website, Fundora Funding references its status as a company "incorporated in California."

6. Fundora Funding represented that it was a broker and offered financing for commercial loans for California consumers. In March 2025, a California consumer contacted Fundora Funding through the Email Address and phone number (818-350-4090) to inquire if Fundora

Funding provided loans for small businesses. The California consumer identified as living in California and provided a California telephone number. In response, the California consumer received a call from Senior Account Manager, Ryan Wilcox, who stated that Fundora Funding works with 75 lenders and also provides in-house lending and underwriting. Wilcox also stated that unsecured capital loans do not require any collateral or credit checks and has a term of 6-24 months. Following the conversation, Wilcox sent an email from ryan@fundorafunding.com to the California consumer stating that it had different business financing options that could work for the California consumer, provided a link to a company intake form, and requested business bank statements from the California consumer for the prospective loan.

7. Financial Code section 22100(a) provides, "No person shall engage in the business of a finance lender or broker without obtaining a license from the commissioner."

8. Fundora Funding has not been issued a license by the Commissioner authorizing it to engage in the business of a broker and/or finance lender under the California Financing Law, nor is Fundora Funding exempt from the licensing requirements of Financial Code section 22100.

Based on the foregoing findings, the Commissioner is of the opinion that Fundora Funding and Ryan Wilcox have engaged in the business of brokering and/or finance lending without having first obtained a license from the Commissioner in violation of Financial Code section 22100.

Pursuant to Financial Code section 22712, Fundora Funding is hereby ordered to desist and refrain from engaging in the business of finance lender and/or broker in the State of California without first obtaining a license from the Commissioner or otherwise being exempt.

This Order is necessary, in the public interest, for the protection of consumers and is consistent with the purposes, policies and provisions of the California Financing Law.

Date: May 19, 2025
Los Angeles, California

KHALIL MOHSENI
Commissioner of Financial Protection and Innovation



By: _____
MARY ANN SMITH
Deputy Commissioner
Enforcement Division